IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NATIONAL ALLIANCE FOR          )
ACCESSIBILITY, INC., and       )
DENISE PAYNE,                  )
                               )
          Plaintiffs,          )
                               )
     v.                        )          1:11-cv-730
                               )
BIG LOTS STORES, INC., an Ohio )
Corporation, and BATTLEGROUND  )
ACQUISITIONS, LLC, a Delaware  )
Limited Liability Corporation, )
                               )
          Defendants.          )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Plaintiffs National Alliance for Accessibility, Inc.
("NAA"), and Denise Payne ("Payne") seek declaratory and
injunctive relief against Defendants Big Lots Stores, Inc. ("Big
Lots") and Battleground Acquisitions, LLC, for alleged
violations of the Americans with Disabilities Act of 1990, 42
U.S.C. §§ 12101-12213 (2006 & Supp. 2011) ("ADA").  Before the
court is Big Lots's motion to dismiss the complaint for lack of
subject matter jurisdiction and failure to state a claim,
pursuant to Federal Rules of Civil Procedure 12(b)(1) and
12(b)(6), respectively.  (Doc. 10.)  For the reasons set forth
below, the court will grant Big Lots's motion to dismiss on the
ground that Plaintiffs lack standing.

## I. BACKGROUND

Payne, who was born with cerebral palsy and is confined to a wheelchair for mobility, characterizes herself as an advocate for disabled individuals. (Doc. 1 ¶ 8; Doc. 18-1 ¶¶ 1, 5.) From her home in Florida, she and the organization she founded, the NAA, seek to promote equality for disabled individuals through ADA litigation. (Doc. 18-1 ¶¶ 2, 5.) As of September 2012, Plaintiffs had filed at least 290 ADA cases, over 80 in North Carolina. Nat'l Alliance for Accessibility, Inc. v. NCP W. Blvd. LLC, No. 5:11-CV-357-FL, 2012 WL 3834931, at *1 (E.D.N.C. Sept. 4, 2012). At least 24 of these lawsuits were filed in the Middle District of North Carolina alone. More specifically, Plaintiffs have sued Big Lots over at least four of its other North Carolina stores in the past two years. See Payne v. Big Lots Stores, Inc., 5:12-cv-349 (E.D.N.C. June 18, 2012) (Fayetteville store); Nat'l Alliance for Accessibility, Inc. v. Big Lots Stores, Inc., No. 5:12-cv-0006 (E.D.N.C. Jan. 6, 2012) (Raleigh store); Nat'l Alliance for Accessibility, Inc. v. Big Lots Stores, Inc., No. 5:11-cv-741 (E.D.N.C. Dec. 20, 2011) (Cary store); Nat'l Alliance for Accessibility, Inc. v. Big Lots Stores, Inc., No. 1:11-cv-941 (M.D.N.C. Oct. 31, 2011) (High Point store).[1]

---

[1] Plaintiffs have also actively pursued ADA litigation against Big Lots in Florida. Payne has brought at least four cases against Big Lots

The present lawsuit arises from a July 25, 2010, visit Payne paid to Big Lots's store located at 3718 Battleground Avenue in Greensboro, North Carolina (also the "Store"). (Doc. 1 ¶¶ 4, 8.) For purposes of this motion, the court assumes without deciding that the Store is a place of public accommodation subject to the requirements of Title III of the ADA. See 42 U.S.C. § 12182. Payne claims that Big Lots "discriminated against [her] by denying [her] access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of [its] place of public accommodation or commercial facility . . . in violation of 42 U.S.C. § 12181 et seq. and 28 C.F.R. [§] 36.302 et seq." (Doc. 1 ¶ 19.) Specifically, Plaintiffs identify nine alleged ADA violations. Most relate to the accommodations for disabled individuals in the Store's restrooms, including signage, grab bars, clear floor space, and latch mechanisms. (Id. ¶ 16.) One alleged violation is the lack of "policies and procedures to inform its staff and employees on how to deal with disabled individuals and how to put in place and maintain an ADA

---

across that state since November 2011. Nat'l Alliance for Accessibility, Inc. v. Big Lots Stores, Inc., No. 0:12-cv-60243-WPD (S.D. Fla. Feb. 9, 2012) (Hollywood, Fla.); Nat'l Alliance for Accessibility, Inc. v. Big Lots Stores, Inc., No. 9:11-cv-81234-KLR (S.D. Fla. Feb. 2, 2012) (Fort Lauderdale, Fla.); Payne v. Big Lots Stores, Inc., No. 3:11-cv-1122-J-32 TEM (M.D. Fla. Nov. 14, 2011) (Jacksonville, Fla.); Nat'l Alliance for Accessibility, Inc. v. Big Lots Stores, Inc., No. 0:11-cv-62392 (S.D. Fla. Nov. 7, 2011) (West Palm Beach, Fla.).

compliant facility." (Id.) Beyond her conclusory accusation that she has "been personally injured" (id. ¶ 22), there is no allegation in the complaint that Payne was prevented from using the restroom or that she was otherwise unable to access and shop at the Store. Plaintiffs allege that they would need a full inspection of the Store to "determine all of the applicable areas of non-compliance with the [ADA]." (Id. ¶ 18.)

In an affidavit filed in response to Big Lots's motion on January 12, 2012, Payne states that she had plans to visit the Store between May 3 and 6, 2012, because she has an appointment with her attorney of record, Chris Lane, whom she represents has his office in Greensboro. (Doc. 17 at 3; Doc. 18-1 ¶ 7.) She says she prefers the Store because shopping there is "a habit" for her and the Store "has a nice selection of candies, and in particular, something that's difficult to find anywhere else, tiny trial size toiletries."[2] (Id. ¶ 8.) She also buys clothes and likes to "just browse and 'window shop' inside, looking at all the Big Lots goods." (Id.) She further represents that she "love[s] to go to the Richard Petty Nascar museum [] in Randleman, close to Greensboro" and "also like[s] the Civil Rights Museum in Greensboro." (Id. ¶ 6.) According to Payne, she "repeat[s] much of the same route when [she] go[es] to North

---

[2] These are the same reasons she has given when suing other Big Lots stores. See, e.g., Nat'l Alliance for Accessibility, Inc. v. Big Lots Stores, Inc., No. 1:11-cv-941 (M.D.N.C. 2011) (Doc. 7 at 6.)

4

Carolina," flying into the Raleigh airport and from there her "first stop is always Greensboro." (Id.) Finally, she states that she had planned to visit the Store in the spring of 2011 but could not because of medical reasons. (Id. ¶ 9.)

## II. ANALYSIS

Big Lots moves to dismiss Plaintiffs' amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 10.) Big Lots argues, as several other district courts in North Carolina have found, that Plaintiffs fail to sufficiently show that Payne will return to the Store and therefore are unable to meet the burden of demonstrating a likelihood of future harm to Payne. Payne, Big Lots contends, lives over 700 miles from Greensboro, lacks a record of past patronage to the Store, and has manufactured incredible reasons to support her contention that she has plans to return to the Store. Because Payne lacks standing, Big Lots contends, the NAA, whose status is derivative of Payne's, lacks standing as well.

Plaintiffs argue that Big Lots has acted unlawfully and that Payne's two visits to the Store establish a real and immediate threat of repeated injury that is not conjectural or hypothetical. Plaintiffs also object here, as they have in other cases, to the use of the proximity test -- a set of factors for determining standing used by a large number of federal courts, including district courts in the Fourth Circuit,

based on considerations such as a plaintiff's distance from the business and her past patronage of the establishment -- for evaluating standing. (Doc. 17 at 12.) Instead, Plaintiffs urge the court to focus on the fact that Big Lots's alleged non-compliance with the ADA creates an ongoing injury to disabled individuals like Payne.

Federal district courts exercise limited jurisdiction. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). For a case or controversy to be justiciable in federal court, a plaintiff must allege "'such a personal stake in the outcome of the controversy as to warrant [her] invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on [her] behalf.'" White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005) (quoting Planned Parenthood of S.C. v. Rose, 361 F.3d 786, 789 (4th Cir. 2004)). The judicial doctrine of standing is "an integral component of the case or controversy requirement." CGM, LLC v. BellSouth Telecomms., Inc., 664 F.3d 46, 52 (4th Cir. 2011) (citation and internal quotation marks omitted). The party seeking to invoke the federal courts' jurisdiction has the burden of satisfying Article III's standing requirement. Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006). To meet that burden, a plaintiff must demonstrate three elements: (1) that she has suffered an injury in fact that is "concrete and

6

particularized" and "actual or imminent"; (2) that the injury is fairly traceable to the challenged conduct; and (3) that a favorable decision is likely to redress the injury.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).

Where, as here, a plaintiff seeks injunctive relief, the injury in fact element requires a showing of "irreparable injury."  <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 111 (1983). According to the Supreme Court, "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy."  <u>Id.</u> at 103. Absent a "sufficient likelihood that [the plaintiff] will again be wronged in a similar way, [the plaintiff] is no more entitled to an injunction than any other citizen."  <u>Id.</u> at 111.

Generally, challenges to standing are addressed under Rule 12(b)(1) for lack of subject matter jurisdiction.[3]  <u>CGM</u>, 664 F.3d at 52 (distinguishing statutory standing from Article III and prudential standing); <u>see also</u> <u>Pitt Cnty. v. Hotels.com, L.P.</u>, 553 F.3d 308, 311 (4th Cir. 2009) (noting that the district

---

[3] Here, Big Lots has moved to dismiss for lack of standing under Rule 12(b)(1) and Rule 12(b)(6).  The Fourth Circuit has explained, however, that Rule 12(b)(6) is generally reserved for challenges to statutory -- not constitutional -- standing.  <u>CGM</u>, 664 F.3d at 51-52; <u>cf.</u> <u>Daniels v. Arcade, L.P.</u>, 477 F. App'x 125, 127 n.1 (4th Cir. 2012) (unpublished) (analyzing standing under Rule 12(b)(6) only because neither party assigned error to the district court's analysis on that basis).  Because Big Lots's argument addresses Plaintiffs' lack of constitutional standing under Article III, the court construes the motion solely as one challenging the court's subject matter jurisdiction under Rule 12(b)(1).

court re-characterized a defendant's challenge to standing from a motion to dismiss for failure to state a claim under Rule 12(b)(6) to a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)). When resolving a motion under Rule 12(b)(1), "'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'"[4] Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 647 (4th Cir. 1999) (quoting Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991)). Where a defendant has not provided evidence to dispute the veracity of the jurisdictional allegations in the complaint, the court accepts

---

[4] It has been said that "[t]he procedural means for resolving standing issues are not as clearly defined as might be imagined." 13B Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 3531.15, at 301 (3d ed. 2008). In the Fourth Circuit, where a party moves under Rule 12(b)(1) on the basis that a complaint fails to allege facts supporting the court's subject matter jurisdiction, the plaintiff "is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). On the other hand, where a party contests the veracity of the jurisdictional allegations in the complaint, "[a] trial court may consider evidence by affidavit" and "weigh[] the evidence to determine its jurisdiction." Id. This appears to be consistent with the Fifth Circuit's approach, which permits district courts to consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by the undisputed facts plus the court's resolution of disputed facts" when resolving motions under Rule 12(b)(1). Lane v. Halliburton, 529 F.3d 548, 557 (5th Cir. 2008) (citation and internal quotation marks omitted); see also Hostetler v. United States, 97 F. Supp. 2d 691, 694 (E.D. Va. 2000) (applying the same test).

facts alleged in the complaint as true just as it would under Rule 12(b)(6). <u>Kerns v. United States</u>, 585 F.3d 187, 192-93 (4th Cir. 2009) (citing <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982)). In addition, the court assumes the truth of the uncontested facts augmented by a plaintiff's affidavits. <u>Fair Hous. in Huntington Comm., Inc. v. Town of Huntington, N.Y.</u>, 316 F.3d 357, 362 (2d Cir. 2003). Ultimately, the plaintiff bears the burden of "clearly . . . alleg[ing] facts demonstrating that [s]he is a proper party to invoke judicial resolution of the dispute." <u>Warth v. Seldin</u>, 422 U.S. 490, 518 (1975).

### A. Plaintiffs' Claim of Actual or Imminent Injury

Plaintiffs contend that absent an injunction from this court, they will suffer an irreparable injury because of Big Lots's alleged ongoing violations of the ADA. A disabled individual seeking an injunction under the ADA, however, must, like all litigants in federal court, satisfy the case or controversy requirement of Article III. <u>Chapman v. Pier 1 Imports (U.S.) Inc.</u>, 631 F.3d 939, 946 (9th Cir. 2011) (en banc). A plaintiff's "profession of an 'inten[t]' to return to the places [she] ha[s] visited before" is generally insufficient to establish standing to seek injunctive relief. <u>Lujan</u>, 504 U.S. at 564 (first alteration in original). "Such 'some day' intentions -- without any description of concrete plans, or indeed even any specification of <u>when</u> the some day will be -- do

9

not support a finding of the 'actual or imminent' injury" required by Supreme Court precedent interpreting Article III. Id. Thus, to show likely future harm, Payne must demonstrate a sufficiently concrete intention to return to Big Lots's Store in Greensboro. Norkunas v. Park Rd. Shopping Ctr., Inc., 777 F. Supp. 2d 998, 1001 (W.D.N.C. 2011) (citing Lujan, 504 U.S. at 564), aff'd, 474 F. App'x 369 (4th Cir. 2012) (unpublished per curiam opinion).

Here, although Payne lives in Florida, she states she is in the process of establishing two local chapters of her NAA advocacy group – one in Raleigh, and one in Asheville. (Doc. 18-1 ¶ 5.) She alleges that "[a]s with anyone else, I have favorite stores where I go back and forth to get things I need, and for me, I have a habit of shopping at Big Lots." (Doc. 18-1 ¶ 7.) The complaint alleges Payne has "definite[] plans to return to Greensboro to shop at the Big Lots on two separate occasions in the coming months of 2011, for which trips she already has reservations." (Doc. 1 ¶ 8.) In her affidavit, however, Payne notes that she visited only once in 2011, in October. (Doc. 18-1 ¶ 9.) In addition, she alleges that she plans to visit the Store "not only to avail herself of the goods and services available . . . but to assure herself that this property is in compliance with the ADA." (Doc. 1 ¶ 13.)

In assessing the plausibility of a plaintiff's claim that she is likely to return to the site of the discrimination (at least once the barriers to her return are removed), courts often find the following factors helpful: "(1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel." Norkunas, 777 F. Supp. 2d at 1002; Access 4 All, Inc. v. Absecon Hospitality Corp., Civ. A. No. 04-6060, 2006 WL 3109966, at *6 (D.N.J. Oct. 30, 2006); see also Camarillo v. Carrols Corp., 518 F.3d 153, 158 (2d Cir. 2008) (per curiam) (considering a plaintiff's past patronage of the defendant's establishment and its proximity to her home to be factors in finding standing). Here, too, the court finds these factors helpful and will consider them, in addition to any other relevant factor raised by the facts. Each will be addressed in turn.

### 1. Proximity to Defendant's Business

Courts have found that a plaintiff's proximity to a defendant's place of business is generally probative of the likelihood that the plaintiff will return to the site of past discrimination and suffer harm. Camarillo, 518 F.3d at 158; Nat'l Alliance for Accessibility, Inv. v. Waffle House, Inc., No. 5:10-CV-375-FL, 2011 WL 2580679, at *2 (E.D.N.C. June 29,

11

2011) (Waffle House I); cf. Daniels v. Arcade, L.P., 477 F. App'x 125, 129 (4th Cir. 2012) (unpublished opinion) (noting that the plaintiff's home near the defendant's business weighed in favor of the plaintiff's standing). While no per se rule should apply, the further away a plaintiff ordinarily finds herself from a business, the less likely she is to suffer future harm. Molski v. Kahn Winery, 405 F. Supp. 2d 1160, 1163-64 (C.D. Cal. 2005) ("Where the distance between [a plaintiff's residence and a place of public accommodation] is significant, especially if it is in excess of 100 miles, courts have often held that such a distance weighs against finding a reasonable likelihood of future harm.").

Payne claims that she intends to visit the Store when she visits Greensboro. (Doc. 18-1 ¶¶ 6-9.) However, Payne's home in Broward County, Florida, is more than 700 miles from the Store. In addition, Payne states under oath that upon arriving in North Carolina her first stop is "always Greensboro" and that she will visit the Store because Greensboro is where her attorney of record has his office. (Id. ¶¶ 6-7.) As Big Lots points out, Mr. Lane's office, as plainly noted on his certificate of service information, is not in Greensboro, but rather in Clemmons. Moreover, Payne's claim that she "always" goes directly from the Raleigh airport to Greensboro is flatly contradicted by her statements under oath in another of her

cases pending in this district. In that other case, she states that she travels from the Raleigh airport to Clemmons, where she acknowledges her lawyer has his office, and in doing so stops *in Chapel Hill* to shop at another allegedly non-ADA-complaint business Plaintiffs have sued. <u>See</u> <u>Nat'l Alliance for Accessibility, Inc. v. Chapel Hill N. Properties</u>, No. 1:12-cv-1143 (M.D.N.C. 2012) (Doc. 11-1 ¶¶ 10-11) (emphasis added). The fact that there are such clearly conflicting statements that are calculated to avoid dismissal in these cases is very troubling.[5]

Given the generic nature of the merchandise Payne claims to be purchasing at Big Lots's stores (small candies and mini-toiletries), her claim that in order to shop at the Store she would travel from her home in Florida (especially when she has proven, by her multiple lawsuits against Big Lots stores in

---

[5] Unfortunately, Payne has a practice of submitting false information to courts in an effort to avoid dismissal. For example, in <u>National Alliance for Accessibility, Inc. v. Triad Hospitality Corp.</u>, No. 1:11-cv-527, 2012 WL 996661, at *9-10 (M.D.N.C. Mar. 23, 2012), Payne submitted an affidavit to this court in support of her standing to bring an ADA claim against a hotel in Winston-Salem which contained representations as to her travel activities that were demonstrated to be materially false. Other courts have noted and condemned Plaintiffs' gamesmanship. <u>See, e.g.</u>, <u>Nat'l Alliance for Accessibility, Inc. v. W & K of Asheville, LLC</u>, No. 1:12CV24, 2012 WL 6761420, at *4 (W.D.N.C. Nov. 26, 2012) (Howell, Mag. J.) (finding that Payne and NAA "attempt[ed] to fabricate standing by making misleading and false factual allegations to the Court"), <u>adopted</u>, 2013 WL 30131 (W.D.N.C. Jan. 3, 2013); <u>cf.</u> <u>Payne v. AAC Invests., Inc.</u>, No. 5:12-CV-00264-F, 2013 WL 791261 (E.D.N.C. Mar. 4, 2013) (finding action "frivolous, unreasonable, and without foundation"; allowing defendant's motion for attorneys' fees).

Florida, that there are stores much closer to her in her home state) or deviate from her occasional travels through North Carolina (where she has also sued multiple Big Lots stores located 80 miles or more apart), and her erroneous and conflicting representations to this court about her travel plans and reasons, this factor weighs strongly against Payne's standing.

### 2. Plaintiffs' Past Patronage

Courts have found that a plaintiff's past patronage of a defendant's place of business is probative of a likelihood to return. See Kahn Winery, 405 F. Supp. 2d at 1163-64. However, "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by continuing, present adverse effect.'" Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd., No. Civ. A. 3:05-CV-1307-G, 2005 WL 2989307, at *4 (N.D. Tex. Nov. 7, 2005) (alterations in original) (quoting Lyons, 461 U.S. at 102). Accordingly, a plaintiff's single prior visit to a defendant's place of business is insufficient to make it likely that she will face harm there in the future. Kahn Winery, 405 F. Supp. 2d at 1164. And even multiple prior visits to a place of public accommodation are not sufficient to show a likelihood of future harm in the absence of additional allegations. Naiman v. N.Y.

14

Univ., No. 95 CIV. 6469(LMM), 1997 WL 249970, at *5 (S.D.N.Y. May 13, 1997).

Here, Payne represents that she visited the Store on two occasions, July 25, 2010, and sometime in October 2011. (Doc. 1 ¶ 8; Doc. 18-1 ¶ 9.) On the first occasion, Payne alleges, she purchased toiletries with her "customer loyalty discount card." (Doc. 1 ¶ 8.) She does not state whether she made any purchases on her second visit (Doc. 18-1 ¶ 9) although her briefing states that she did not keep "her receipt" from the October 2011 visit (Doc. 17 at 3). At this stage in the proceedings, the court accepts that she has visited the Store twice. Of course, two visits in a two-year span is meager, but the court regards this factor as weighing, ever so slightly, in Plaintiffs' favor.

### 3. Definitiveness of Plans to Return

Courts also consider the definitiveness of a plaintiff's plans to return to the defendant's place of business. Nat'l Alliance for Accessibility, Inc. v. Waffle House, Inc. (Waffle House II), No. 5:10-CV-385-D, 2011 WL 4544017, at *2 (E.D.N.C. Sept. 29, 2011). Although a plaintiff does not need to engage in the "futile gesture" of re-visiting a place of business that is unsafe for disabled individuals, she must still prove that she would visit the business in the imminent future but for those safety barriers. Steger v. Franco, Inc., 228 F.3d 889, 892-93 (8th Cir. 2000). When assessing the definitiveness of a

15

plaintiff's plans to return, courts have considered booked hotel reservations, see Disabled Patriots of Am., Inc. v. Fu, No. 3:08CV542-RJC-DSC, 2009 WL 1470687, at *3 (W.D.N.C. May 26, 2009), or plane tickets, Lujan, 504 U.S. at 579 (Kennedy, J., concurring) (explaining that a requirement that the plaintiff demonstrate the acquisition of airline tickets or announce a "date certain" to return to the location at the core of their suit is not trivial because a plaintiff must establish a personal stake in the case's outcome (citing Lyons, 461 U.S. at 101-02)), to be indicative of concrete plans, while vague and self-serving desires to revisit a particular establishment fall short of the definitiveness required to show a likelihood of future harm, Norkunas, 777 F. Supp. 2d at 1002. In any event, a plaintiff's intent to return must exist at the time the complaint is filed. Steger, 228 F.3d at 892-93 (noting that the relevant facts for standing purposes are those that exist at the time a complaint is filed).

In this case, the complaint alleges that Payne will return to the Store "in the coming months in 2011, for which trips she already has reservations." (Doc. 1 ¶ 8.) Payne's affidavit, however, notes that she failed to make a trip in the spring of 2011 (Doc. 18-1 ¶ 9), a time before she filed her complaint in September 2011 (Doc. 1). The affidavit makes no mention of a second trip (in addition to the October 2011 visit) planned "in

16

the coming months in 2011," which would have had to have been reserved for a period between the date of the complaint (September 13, 2011) and the end of 2011 (December 31, 2011). In her affidavit, Payne stated an intent to return between May 3 and 6, 2012. (Doc. 18-1 ¶ 9.) Of course, the court is interested in the conditions supporting standing that existed at the time the complaint was filed. See Am. Civil Liberties Union of Nev. v. Lomax, 471 F.3d 1010, 1015 (9th Cir. 2006). Yet, these shifting representations, even taken in a light most favorable to Payne, cast substantial doubt on the definitiveness of her plans to return to this Store. This is especially true given Payne's erroneous representations about her reasons for travelling to Greensboro in the first place. For example, in addition to her false statement about her lawyer's office being there, she claims she will visit Greensboro and thus the Store because she "love[s]" to go to the Richard Petty NASCAR museum in Randleman "close to Greensboro." (Doc. 18-1 ¶ 6.) But Randleman is some 20 miles away from Greensboro. Moreover, Plaintiffs have alleged this same reason to justify suing other retail establishments in this very court. See, e.g., Nat'l Alliance for Accessibility, Inc. v. Triad Hospitality Corp., No. 1:11-cv-527, 2012 WL 996661 (M.D.N.C. Mar. 23, 2012) (relying on Richard Petty NASCAR Museum pass to support standing to sue Quality Inn hotel in Winston-Salem); Nat'l Alliance for

17

Accessibility, Inc. v. JG Winston Salem, LLC, No. 1:11-cv-907 (M.D.N.C.) (relying on July 2010 church trip, October 19, 2011 trip, and Richard Petty Nascar Museum pass to support standing to sue owners of Hanes Mall in Winston-Salem); Nat'l Alliance for Accessibility, Inc. v. Dillard's Inc., No. 1:11-cv-886 (M.D.N.C.) (relying on July 2010 church trip, October 19, 2011 trip, Richard Petty NASCAR museum pass, and lawyer's location in Clemmons to support standing to sue Dillard's department store in Winston-Salem); Nat'l Alliance for Accessibility, Inc. v. Belk, Inc., No. 1:11-cv-903 (M.D.N.C.) (relying on July 2010 church trip, October 19, 2011 trip, Richard Petty NASCAR museum pass, and lawyer's location in Clemmons to support standing to sue Belk, Inc.'s department store in Winston-Salem).[6]

---

[6]  Plaintiffs have also used the same alleged October 2011 trip to North Carolina and meeting with their attorney in Clemmons to support lawsuits against other establishments.  See, e.g., Nat'l Alliance for Accessibility, Inc. v. Macy's Retail Holdings, Inc., No. 1:11-cv-877, 2012 WL 5381490 (M.D.N.C. Oct. 30, 2012) (relying on 2010 church trip and October 2011 visit to support standing to sue Macy's store at Hanes Mall in Winston-Salem); Nat'l Alliance for Accessibility, Inc. v. Waffle House, Inc., No. 1:11-cv-914 (M.D.N.C.) (relying on 2010 church trip and October 19-21, 2011 trip to support standing to sue Waffle House located in Winston-Salem); Nat'l Alliance for Accessibility, Inc. v. Big Lots Stores, Inc., No. 1:11-cv-941, 2012 WL 1440226 (M.D.N.C. Apr. 26, 2012) (relying on two undated trips to North Carolina in 2010 and one undated trip in 2011 (presumably the same as those in this case) to visit disabled friend in High Point to support standing to sue Big Lots store in High Point); Nat'l Alliance for Accessibility, Inc. v. Rite Aid of N.C., Inc., No. 1:10CV932, 2011 WL 4499294 (M.D.N.C. Sept. 27, 2011) (Auld, Mag. J.) (relying on 2010 church trip and October 2011 trip to support standing to sue drug store in Chapel Hill), adopted, No. 1:10CV932 (M.D.N.C. Nov. 7, 2011) (Doc. 28); Payne v. Chapel Hill N. Properties, LLC, No. 1:12-cv-1143, 2013 WL 2285248 (M.D.N.C. May 23, 2012) (relying on 2010 church trip,

Moreover, beyond her interest in Big Lots's "small candies" and travel-size toiletries (which are apparently available at each of Big Lots's stores in her region, not to mention at virtually an unlimited number of drug, discount, and convenience stores), Payne has failed to indicate a special interest in <u>this</u> Big Lots Store. In truth, a primary – and likely only – motivation for visiting the Greensboro Store in the future is to test the Store's compliance with the ADA.[7] (Doc. 1 ¶ 13.) Courts are split over whether a plaintiff can demonstrate a concrete interest in returning to a business based on assessing its compliance with the ADA. <u>Compare</u> <u>Norkunas</u>, 777 F. Supp. 2d at 1005 ("[T]he law makes clear that a Title III plaintiff cannot use her status as a tester to satisfy the standing requirements where she would not have standing otherwise." (citing cases)), <u>and</u> <u>Harris v. Stonecrest Care Auto Ctr., LLC</u>, 472 F. Supp. 2d 1208, 1219-20 (S.D. Cal. 2007) ("Where [Title III] litigation is the only reason for a plaintiff's visit to a particular local establishment, once litigation is complete it

_____

October 2011 trip, and meeting with lawyer in Clemmons to support standing to sue operator of shopping center in Chapel Hill).

[7] In ADA litigation, a "tester" is an individual who tests a location's compliance with federal disability statutes. <u>Judy v. Pingue</u>, No. 2:08-CV-859, 2009 WL 4261389, at *5 (S.D. Ohio Nov. 25, 2009). That Payne is motivated to test the Store's compliance with the ADA is underscored by her briefing in which she argues at length about the chain's alleged deficiencies in its stores nationwide and the manner in which it defends her multiple lawsuits against it. (Doc. 17 at 4, 5, 17.)

19

is unlikely such a plaintiff will return to avail himself of the business' goods or services, or to visit the local business for any other reason."), with Absecon Hospitality, 2006 WL 3109966, at *7 ("[T]he motive for a plaintiff to return to a particular place of public accommodation is not a factor typically considered by the Court.").

In this court's view, the better approach is that a plaintiff "'cannot use her status as a tester to satisfy the standing requirements where she would not have standing otherwise.'" Waffle House I, 2011 WL 2580679, at *3 (quoting Norkunas, 777 F Supp. 2d at 1005); see also Nat'l Alliance for Accessibility, Inc. v. Rite Aid of N.C., Inc., No. 1:10CV932, 2011 WL 4499294, at *8 (M.D.N.C. Sept. 27, 2011) (Auld, Mag. J.) (same), adopted, No. 1:10CV932 (M.D.N.C. Nov. 7, 2011). Therefore, Plaintiffs' shifting representations about when Payne will return to the Store and her admitted status as a tester -- in the absence of a specific interest in this particular Big Lots Store or evidence of regular patronage -- cast doubt on the definitiveness of her plans to return to this particular store. Consequently, the court finds that Payne fails to provide any of the indicia of concrete plans to support a finding that she will suffer an actual or imminent injury necessary for standing. See Lujan, 504 U.S. at 564.

20

### 4. Frequency of Nearby Travels

Courts also look to the frequency of a plaintiff's travels to the nearby area. _Waffle House II_, 2011 WL 4544017, at *2. Payne represents that she goes to North Carolina to meet with other disabled individuals and organizations and that her "first stop is always Greensboro." (Doc. 7 at 5.) The business reason she lists – her lawyer's office – is patently false. The Richard Petty NASCAR museum she says she likes to visit is some 20 miles away in another city, and she states only that she "like[s] the Civil Rights Museum in Greensboro" but does not indicate that she has ever patronized it, much less that she has any plans to do so in the future. As other courts have noted, "[i]t is implausible that Payne, a Florida resident, who travels approximately once or twice a year to [North Carolina] plans to return to each of the thirty-two [now over 80] properties in North Carolina she has sued for noncompliance with the ADA." _Nat'l Alliance for Accessibility, Inc. v. Bhuna Corp._, No. 1:11CV79, 2011 WL 6935497, at *3-4 (W.D.N.C. Dec. 3, 2011) (Howell, Mag. J.) (quoting and reaching same conclusion as _Waffle House I_, 2011 WL 2580679, at *3), _adopted_, 2011 WL 6936181 (W.D.N.C. Dec. 30, 2011). On this record, Payne's prior sporadic trips to Greensboro are weak evidence to establish that her nearby travels will make it likely that she will suffer actual or imminent harm at the Big Lots Store at issue.

Taking the allegations concerning standing as a whole, the court concludes that Payne has failed to make the requisite showing that she is sufficiently likely to suffer an actual or imminent injury. Her residence of some 700 miles from the Greensboro Store, her vague reasons to return to the area and the Store, her limited number of past trips to Greensboro, and her misrepresentations to the court as to her travel intentions render implausible her representation that she faces an actual or imminent threat of future harm despite her claim that she has visited Greensboro twice in the two years preceding the close of briefing. The absence of a plausible claim that Payne will suffer an irreparable injury in fact prevents her from having standing to utilize the injunctive power of the federal courts.

**B. NAA**

Plaintiffs fail to make a separate argument concerning the NAA's basis for standing, but the complaint appears to rely on NAA's status as Payne's frequent litigation partner. Generally, in the absence of a direct injury to an organization, it will only have standing if it can show that (1) at least one of its members would have standing to sue as an individual, (2) the interests at stake in the litigation are germane to the organization's purpose, and (3) neither the claim made nor the relief requested requires the participation of the individual members in the suit. Retail Indus. Leaders Ass'n v. Fielder,

22

475 F.3d 180, 186 (4th Cir. 2007). Such associational or representative standing is satisfied even where just one of the association's members would have standing. <u>Warth</u>, 422 U.S. at 490.

Here, the only member of the NAA who is identified specifically in the record is Payne. Because she lacks standing to sue in her own right, the NAA has failed the first prong of the associational standing test. Consequently, Big Lots's motion to dismiss pursuant to Rule 12(b)(1) (Doc. 10) will be granted as to Plaintiff NAA.

## III. CONCLUSION

For the reasons set forth above, therefore,

IT IS ORDERED that Defendant Big Lots's motion to dismiss (Doc. 10) is GRANTED.

A separate Judgment will be entered.


　　　　　　　　　　　　　　 /s/   Thomas D. Schroeder
　　　　　　　　　　　　　 United States District Judge

June 19, 2013